**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>and<br><br>STATE OF TEXAS,<br><br>　　　　　　　Plaintiffs,<br><br>　　　　　　　v.<br><br>CINEMARK HOLDINGS, INC.,<br><br>RAVE HOLDINGS, LLC<br><br>and<br><br>ALDER WOOD PARTNERS, L.P.,<br><br>　　　　　　　Defendants. | Civil Action No. 13-727 (BAH)<br><br>Judge Beryl A. Howell<br><br>Filed August 15, 2013 |

## <u>FINAL JUDGMENT</u>

WHEREAS, Plaintiffs, United States of America and State of Texas, filed their

Complaint on May 20, 2013, the Plaintiffs and Defendants, Cinemark Holdings, Inc.

("Cinemark"), Rave Holdings, LLC ("Rave Cinemas"), and Alder Wood Partners, L.P. ("Alder

Wood Partners"), by their respective attorneys, have consented to the entry of this Final

Judgment without trial or adjudication of any issue of fact or law, and without this Final

Judgment constituting any evidence against or admission by any party regarding any issue of fact

or law;

AND WHEREAS, Defendants agree to be bound by the provisions of this Final Judgment pending its approval by the Court;

AND WHEREAS, the essence of this Final Judgment is the prompt and certain divestiture of certain rights or assets by the Defendants to assure that competition is not substantially lessened;

AND WHEREAS, Plaintiffs require Defendants to make certain divestitures for the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, Defendants have represented to the Plaintiffs that the divestitures required below can and will be made and that Defendants will later raise no claim of hardship or difficulty as grounds for asking the Court to modify any of the divestiture provisions contained below;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED AND DECREED:

## I. <u>Jurisdiction</u>

This Court has jurisdiction over the subject matter of and each of the parties to this action. The Complaint states a claim upon which relief may be granted against Defendants under Section 7 of the Clayton Act, as amended (15 U.S.C. § 18).

## II. <u>Definitions</u>

As used in this Final Judgment:

A.     "Acquirer" or "Acquirers" means the entity or entities to which Cinemark divests the Cinemark Divestiture Assets, and the entity or entities to which Alder Wood Partners divests the Movie Tavern Divestiture Assets.

B.     "Cinemark" means Defendant Cinemark Holdings, Inc., a Delaware corporation with its headquarters in Plano, Texas, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

C.     "Rave Cinemas" means Defendant Rave Holdings, LLC, a Delaware limited liability company with its headquarters in Dallas, Texas, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

D.     "Alder Wood Partners" means Defendant Alder Wood Partners, L.P., a Texas limited partnership with its headquarters in Dallas, Texas, its partners, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

E.     Movie Tavern, Inc. means ("Movie Tavern"), a Texas corporation with its headquarters in Dallas, Texas and 16 movie theatres in seven states, and that is majority-owned by Alder Wood Partners.

F.     "Divestiture Assets" means the Cinemark Divestiture Assets and the Movie Tavern Divestiture Assets.

G.     "Landlord Consent" means any contractual approval or consent that the landlord or owner of one or more of the Divestiture Assets, or of the property on which one or more of the Divestiture Assets is situated, must grant prior to the transfer of one of the Divestiture Assets to an Acquirer.

H.    "Cinemark Divestiture Assets" means the following theatre assets:

|   | Theatre | Address |
|---|---------|---------|
| 1 | Rave Stonybrook 20 + IMAX | 2745 South Hurstbourne Parkway, Louisville, KY 40220 |
| 2 | Rave Ritz Center 16 | 900 Haddonfield-Berlin Road, Voorhees, NJ 08043 |
| 3 | Rave Hickory Creek 16 **OR** Cinemark 14 | 8380 South Stemmons Freeway, Hickory Creek, TX 75065 2825 Wind River Lane, Denton, TX 76210 |

The term "Cinemark Divestiture Assets" also includes:

1.     All tangible assets that comprise the business of operating theatres that

exhibit first-run, commercial movies, including, but not limited to real property and

improvements, research and development activities, all equipment, fixed assets, and fixtures,

personal property, inventory, office furniture, materials, supplies, and other tangible property and

all assets used in connection with the Cinemark Divestiture Assets; all licenses, permits, and

authorizations issued by any governmental organization relating to the Cinemark Divestiture

Assets; all contracts (including management contracts), teaming arrangements, agreements,

leases, commitments, certifications, and understandings relating primarily to the Cinemark

Divestiture Assets, including supply agreements, (provided however, that supply agreements that

apply to all Cinemark theatres may be excluded from the Cinemark Divestiture Assets, subject to

the transitional agreement provisions specified in Section IV (F)); all customer lists (including

loyalty club data at the option of the Acquirer(s), copies of which may be retained by Cinemark

at its option), contracts, accounts, and credit records relating to the Cinemark Divestiture Assets;

4

all repair and performance records and all other records relating to the Cinemark Divestiture Assets;

        2.      All intangible assets relating to the operation of the Cinemark Divestiture Assets, including, but not limited to all patents, licenses and sublicenses, intellectual property, copyrights, trademarks, trade names, service marks, service names, (provided however, that the name Cinemark, the name Rave, and any registered service marks of Cinemark may be excluded from the Cinemark Divestiture Assets, subject to the transitional agreement provisions specified in Section IV (F)), technical information, computer software and related documentation (provided however, that Cinemark's proprietary software may be excluded from the Cinemark Divestiture Assets, subject to the transitional agreement provisions specified in Section IV (F)), know-how and trade secrets relating primarily to the Cinemark Divestiture Assets, drawings, blueprints, designs, design protocols, specifications for materials, specifications for parts and devices, safety procedures for the handling of materials and substances, all research data concerning historic and current research and development relating to the Cinemark Divestiture Assets, quality assurance and control procedures, design tools and simulation capability, all manuals and technical information Cinemark and/or Rave Cinemas provide to their own employees, customers, suppliers, agents, or licensees (except for the employee manuals that Cinemark provides to all its employees), and all research data concerning historic and current research and development efforts relating to the Cinemark Divestiture Assets.

        I.      "Movie Tavern Divestiture Assets" means the entire business of Movie Tavern, Inc., including, but not limited to, the 16 theatres it currently operates as well as the theatres it has plans to open. The term "Movie Tavern Divestiture Assets" also includes:

1.      All tangible assets that comprise the business of operating theatres that exhibit first-run, commercial movies, including, but not limited to real property and improvements, research and development activities, all equipment, fixed assets, and fixtures, personal property, inventory, office furniture, materials, supplies, and other tangible property and all assets used in connection with the Movie Tavern Divestiture Assets; all licenses, permits, and authorizations issued by any governmental organization relating to the Movie Tavern Divestiture Assets; all contracts (including management contracts), teaming arrangements, agreements, leases, commitments, certifications, and understandings relating to the Movie Tavern Divestiture Assets, including supply agreements; all customer lists (including loyalty club data at the option of the Acquirer(s)), contracts, accounts, and credit records; all repair and performance records and all other records relating to the Movie Tavern Divestiture Assets;

2.      All intangible assets used in the development, production, servicing, and sale of the Movie Tavern Divestiture Assets, including, but not limited to all patents, licenses and sublicenses, intellectual property, copyrights, trademarks, trade names, service marks, service names, technical information, computer software and related documentation, know-how, trade secrets, drawings, blueprints, designs, design protocols, specifications for materials, specifications for parts and devices, safety procedures for the handling of materials and substances, all research data concerning historic and current research and development relating to the Movie Tavern Divestiture Assets, quality assurance and control procedures, design tools and simulation capability, all manuals and technical information Movie Tavern provides to its employees, customers, suppliers, agents, or licensees, and all research data concerning historic and current research and development efforts relating to the Movie Tavern Divestiture Assets.

6

J.      "Western Fort Worth, Texas Movie Tavern Theatres" means the Ridgmar Movie Tavern, the West 7th Street Movie Tavern, and the Hulen Movie Tavern, which are three of the 16 currently operating Movie Tavern theatres included among the Movie Tavern Divestiture Assets.

### III. Applicability

A.      This Final Judgment applies to Cinemark, Rave Cinemas, and Alder Wood Partners, as defined above, and all other persons in active concert or participation with any of them who receive actual notice of this Final Judgment by personal service or otherwise.

B.      If, prior to complying with Sections IV and V of this Final Judgment, Defendants sell or otherwise dispose of all or substantially all of their assets or of lesser business units that include the Divestiture Assets, they shall require the purchaser to be bound by the provisions of this Final Judgment.  Defendants need not obtain such an agreement from the Acquirer(s) of the assets divested pursuant to this Final Judgment.

### IV. Divestitures

A.      Cinemark is ordered and directed, within ninety (90) calendar days after the filing of the Complaint in this matter, or five (5) calendar days after notice of the entry of this Final Judgment by the Court, whichever is later, to divest the Cinemark Divestiture Assets in a manner consistent with this Final Judgment to one or more Acquirer(s) acceptable to the United States in its sole discretion (after consultation with the State of Texas, as appropriate).  The United States, in its sole discretion, may agree to one or more extensions of this time period, not to exceed sixty (60) calendar days in total, and shall notify the Court in such circumstances.  Cinemark agrees to use its best efforts to divest the Cinemark Divestiture Assets as expeditiously as possible.

B.     Alder Wood Partners is ordered and directed, within ninety (90) calendar days after the filing of the Complaint in this matter, or five (5) calendar days after notice of the entry of this Final Judgment by the Court, whichever is later, to divest the Movie Tavern Divestiture Assets in a manner consistent with this Final Judgment to one or more Acquirer(s) acceptable to the United States in its sole discretion (after consultation with the State of Texas, as appropriate). The United States, in its sole discretion, may agree to one or more extensions of this time period not to exceed ninety (90) calendar days in total, and shall notify the Court in such circumstances. Alder Wood Partners agrees to use its best efforts to divest the Movie Tavern Divestiture Assets as expeditiously as possible.

C.     In accomplishing the divestitures ordered by this Final Judgment, Defendants Cinemark and Alder Wood Partners shall each promptly make known, by usual and customary means, the availability of their respective Divestiture Assets.  (For Cinemark, its respective Divesture Assets are the Cinemark Divestiture Assets; and for Alder Wood Partners, its respective Divestiture Assets are the Movie Tavern Divestiture Assets.)  Defendants shall each inform any person making an inquiry regarding a possible purchase of their respective Divestiture Assets that they are being divested pursuant to this Final Judgment and provide that person with a copy of this Final Judgment.  Defendants shall each offer to furnish to all prospective Acquirers, subject to customary confidentiality assurances, all information and documents relating to Defendants' respective Divestiture Assets customarily provided in a due diligence process except such information or documents subject to the attorney-client privilege or work-product doctrine.  Defendants shall each make available such information to the Plaintiffs at the same time that such information is made available to any other person.

D.      Defendants Cinemark and Alder Wood Partners shall provide the Acquirer(s) and the United States information relating to the personnel involved in the operation of their respective Divestiture Assets to enable the Acquirer(s) to make offers of employment. Defendants will not interfere with any negotiations by the Acquirer(s) to employ any Defendant employee with primary responsibility for the operation of their respective Divestiture Assets.

E.      Defendants shall permit prospective Acquirer(s) of their respective Divestiture Assets to have reasonable access to personnel and to make inspections of the physical facilities of their respective Divestiture Assets; access to any and all environmental, zoning, and other permit documents and information; and access to any and all financial, operational, or other documents and information customarily provided as part of a due diligence process.

F.      In connection with the divestiture of the Cinemark Divestiture Assets pursuant to Section IV, or by a trustee appointed pursuant to Section V, of this Final Judgment, at the option of the Acquirer(s), Cinemark shall enter into a commercially reasonable transitional supply, service, support, and use agreement ("transitional agreement"), up to 120 days in length, for the supply of any goods, services, support, including software service and support, and reasonable use of the name Cinemark, the name Rave, and any registered service marks of Cinemark, that the Acquirer(s) request for the operation of the Cinemark Divestiture Assets during the period covered by the transitional agreement. At the request of the Acquirer(s), the United States in its sole discretion (after consultation with the State of Texas, as appropriate), may agree to one or more extensions of this time period not to exceed six (6) months in total. The terms and conditions of the transitional agreement must be acceptable to the United States in its sole discretion (after consultation with the State of Texas, as appropriate). The transitional agreement shall be deemed incorporated into this Final Judgment and a failure by Cinemark to comply with

any of the terms or conditions of the transitional agreement shall constitute a failure to comply with this Final Judgment.

      G.     Cinemark shall warrant to the Acquirer(s) of the Cinemark Divestiture Assets that each asset will be operational on the date of sale.  Alder Wood Partners shall warrant to the Acquirer(s) of the Movie Tavern Divestiture Assets that each asset will be operational on the date of sale.

      H.     Defendants shall not take any action that will impede in any way the permitting, operation, or divestitures of their respective Divestiture Assets.

      I.     Defendants shall warrant to the Acquirer(s) that there are no material defects in the environmental, zoning, or other permits pertaining to the operation of their respective Divestiture Assets.  Following the sale of the Divestiture Assets, Defendants will not undertake, directly or indirectly, any challenges to the environmental, zoning, or other permits relating to the operation of the Divestiture Assets.

      J.     Unless the United States otherwise consents in writing, the divestitures made pursuant to Section IV, and/or by a trustee appointed pursuant to Section V of this Final Judgment, shall include all Divestiture Assets, and shall be accomplished in such a way as to satisfy the United States, in its sole discretion (after consultation with the State of Texas, as appropriate) that the Divestiture Assets can and will be used by the Acquirer(s) as part of a viable, ongoing business of operating theatres that exhibit first-run, commercial movies. Divestitures of the Divestiture Assets may be made to one or more Acquirers, provided that in each instance it is demonstrated to the sole satisfaction of the United States (after consultation with the State of Texas, as appropriate) that the Divestiture Assets will remain viable and the

divestitures of such assets will remedy the competitive harm alleged in the Complaint.  The divestitures, whether pursuant to Section IV or Section V of this Final Judgment,

> (1)     shall be made to Acquirers that, in the United States' sole judgment (after consultation with the State of Texas, as appropriate) have the intent and capability (including the necessary managerial, operational, technical, and financial capability) of competing effectively in the business of theatres exhibiting first-run, commercial movies; and
>
> (2)     shall be accomplished so as to satisfy the United States, in its sole discretion (after consultation with the State of Texas, as appropriate) that none of the terms of any agreement between Acquirers and Defendants give the ability unreasonably to raise the Acquirers' costs, to lower the Acquirers' efficiency, or otherwise to interfere in the ability of the Acquirers to compete effectively.

## V. Appointment of Trustee

A.     If Cinemark has not divested the Cinemark Divestiture Assets within the time period specified in Section IV(A), Cinemark shall notify the United States of that fact in writing. If Alder Wood Partners has not divested the Movie Tavern Divestiture Assets within the time period specified in Section IV(B), Alder Wood Partners shall notify the United States of that fact in writing. Upon application of the United States, the Court shall appoint a trustee selected by the United States and approved by the Court to effect the divestitures of the Cinemark Divestiture Assets and/or the Movie Tavern Divestiture Assets.

B.     After the appointment of a trustee becomes effective, only the trustee shall have the right to sell the Cinemark Divestiture Assets and/or the Movie Tavern Divestiture Assets, as

the case may be. The trustee shall have the power and authority to accomplish the divestitures to Acquirer(s) acceptable to the United States (after consultation with the State of Texas, as appropriate) at such price and on such terms as are then obtainable upon reasonable effort by the trustee, subject to the provisions of Sections IV, V, VI, and VII of this Final Judgment, and shall have such other powers as this Court deems appropriate. Subject to Section V(D) of this Final Judgment, the trustee may hire at the cost and expense of Cinemark and/or Alder Wood Partners, as the case may be, any investment bankers, attorneys, or other agents, who shall be solely accountable to the trustee and reasonably necessary in the trustee's judgment to assist in the divestiture(s).

C.      Defendants shall not object to a sale by the trustee on any ground other than the trustee's malfeasance. Any such objections by Defendants must be conveyed in writing to the United States and the trustee within ten (10) calendar days after the trustee has provided the notice required under Section VII.

D.      The trustee shall serve at the cost and expense of Cinemark and/or Alder Wood Partners, depending on which Divestiture Assets the trustee is selling, pursuant to a written agreement or agreements with the applicable Defendant(s) and on such terms and conditions as the United States approves, and shall account for all monies derived from the sale of the assets sold by the trustee and all costs and expenses so incurred. After approval by the Court of the trustee's accounting, including fees for its services and those of any professionals and agents retained by the trustee, all remaining money shall be paid to Cinemark and/or Movie Tavern, depending on which Divestiture Assets the trustee sold, and the trust shall then be terminated. The compensation of the trustee and any professionals and agents retained by the trustee shall be reasonable in light of the value of the Divestiture Assets and based on a fee arrangement

providing the trustee with an incentive based on the price and terms of the divestitures and the speed with which it is accomplished, but timeliness is paramount.

E.     The applicable Defendant(s) shall use their best efforts to assist the trustee in accomplishing the divestiture of their respective Divesture Assets.  The trustee and any consultants, accountants, attorneys, and other persons retained by the trustee shall have full and complete access to the personnel, books, records, and facilities of the assets and business to be divested, and the applicable Defendant(s) shall develop financial and other information relevant to such assets and business as the trustee may reasonably request, subject to reasonable protection for trade secret or other confidential research, development, or commercial information.  The applicable Defendant(s) shall take no action to interfere with or to impede the trustee's accomplishment of the divestitures.

F.     After its appointment, the trustee shall file monthly reports with the parties and the Court setting forth the trustee's efforts to accomplish the divestitures ordered under this Final Judgment.  To the extent such reports contain information that the trustee deems confidential, such reports shall not be filed in the public docket of the Court.  Such reports shall include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person.  The trustee shall maintain full records of all efforts made to divest the Cinemark Divestiture Assets and/or Movie Tavern Divestiture Assets, as the case may be.

G.     If the trustee is responsible for effecting divestiture of all or any part of the Movie Tavern Divestiture Assets, it shall notify the United States and Alder Wood Partners within five

13

(5) business days following a determination that it is unable for any reason to accomplish the divestiture. If the Movie Tavern Divestiture Assets that the trustee is unable to divest include any of the Western Fort Worth, Texas Movie Tavern Theatres, the trustee shall then divest the Ridgmar 13 + Xtreme theatre assets located at 2300 Green Oaks Road, Fort Worth, Texas.

H.    If the trustee has not accomplished the divestitures ordered under this Final Judgment within six (6) months after its appointment, the trustee shall promptly file with the Court a report setting forth (1) the trustee's efforts to accomplish the required divestitures, (2) the reasons, in the trustee's judgment, why the required divestitures have not been accomplished, and (3) the trustee's recommendations. To the extent such reports contain information that the trustee deems confidential, such reports shall not be filed in the public docket of the Court. The trustee shall at the same time furnish such report to the United States, which shall have the right to make additional recommendations consistent with the purpose of the trust. The Court thereafter shall enter such orders as it shall deem appropriate to carry out the purpose of the Final Judgment, which may, if necessary, include extending the trust and the term of the trustee's appointment by a period requested by the United States.

## VI. Landlord Consent

A.    If Cinemark is unable to effect any of the divestitures required herein due to the inability to obtain the Landlord Consent for any of the Cinemark Divestiture Assets, Cinemark shall divest alternative theatre assets that compete effectively with the theatre or theatres for which the Landlord Consent was not obtained. The United States shall, in its sole discretion (after consultation with the State of Texas, as appropriate) determine whether such theatre assets compete effectively with the theatres for which Landlord Consent was not obtained.

B.      If Alder Wood Partners is unable to effect divestiture of any of the Western Fort

Worth, Texas Movie Tavern Theatres due to the inability to obtain the Landlord Consent,

Cinemark shall then divest the Ridgmar 13 + Xtreme theatre assets located at 2300 Green Oaks

Road, Fort Worth, Texas, and such assets shall be deemed to be part of the Cinemark Divestiture

Assets.

C.      Within five (5) business days following a determination that Landlord Consent

cannot be obtained for any of the Divestiture Assets, Cinemark and/or Alder Wood Partners, as

applicable, shall notify the United States, and Cinemark shall propose an alternative divestiture

pursuant to Section VI (A).  The United States (after consultation with the State of Texas, as

appropriate) shall have then ten (10) business days in which to determine whether such theatre

assets are a suitable alternative pursuant to Section VI (A).  If Cinemark's selection is deemed

not to be a suitable alternative, the United States shall in its sole discretion select alternative

theatre assets to be divested (after consultation with the State of Texas, as appropriate) from

among those theatre(s) that the United States has determined, in its sole discretion, to compete

effectively with the theatre(s) for which Landlord Consent was not obtained.

D.      If the trustee is responsible for effecting divestiture of the Cinemark Divestiture

Assets, it shall notify the United States and Cinemark within five (5) business days following a

determination that Landlord Consent cannot be obtained for one or more of the Cinemark

Divestiture Assets.  Cinemark shall thereafter have five (5) business days to propose an

alternative divestiture pursuant to Section VI (A).  The United States (after consultation with the

State of Texas, as appropriate) shall then have ten (10) business days to determine whether the

proposed theatre assets are a suitable competitive alternative pursuant to Section VI (A).  If

Cinemark's selection is deemed not to be a suitable competitive alternative, the United States

shall in its sole discretion select alternative theatre assets to be divested (after consultation with the State of Texas, as appropriate) from among those theatre(s) that the United States has determined, in its sole discretion, to compete effectively with the theatre(s) for which Landlord Consent was not obtained.

### VII. Notice of Proposed Divestitures

A.     Within two (2) business days following execution of a definitive divestiture agreement, Cinemark and/or Alder Wood Partners or the trustee, whichever is then responsible for effecting the divestitures required herein, shall notify the United States (and, as appropriate, the State of Texas), of any proposed divestitures required by Sections IV or V of this Final Judgment.  If the trustee is responsible, it shall similarly notify Defendants.  The notice shall set forth the details of the proposed divestitures and list the name, address, and telephone number of each person not previously identified who offered or expressed an interest in or desire to acquire any ownership interest in the Divestiture Assets, together with full details of the same.

B.     Within fifteen (15) calendar days of receipt by the United States of such notice, the United States, in its sole discretion, after consultation with the State of Texas, as appropriate, may request from Defendants, the proposed Acquirer(s), any other third party, or the trustee, if applicable, additional information concerning the proposed divestitures, the proposed Acquirer(s), and any other potential Acquirer(s).  Defendants and the trustee shall furnish any additional information requested to the United States within fifteen (15) calendar days of receipt of the request, unless the parties otherwise agree.

C.     Within thirty (30) calendar days after receipt of the notice or within twenty (20) calendar days after the United States has been provided the additional information requested from Defendants, the proposed Acquirer(s), any third party, and the trustee, whichever is later,

the United States shall provide written notice to Cinemark and/or Alder Wood Partners, as applicable, and the trustee, if there is one, stating whether it objects to the proposed divestitures. If the United States provides written notice that it does not object, the divestitures may be consummated, subject only to the applicable Defendant(s)' limited right to object to the sale under Section V(C) of this Final Judgment.  Absent written notice that the United States does not object to the proposed Acquirer(s) or upon objection by the United States, a divestiture proposed under Section IV or Section V shall not be consummated.  Upon objection by Defendants under Section V(C), a divestiture proposed under Section V shall not be consummated unless approved by the Court.

## VIII.  <u>Financing</u>

Defendants shall not finance all or any part of any purchase made pursuant to Section IV or V of this Final Judgment.

## IX.  <u>Hold Separate</u>

Until the divestitures required by this Final Judgment have been accomplished, Defendants shall take all steps necessary to comply with the Hold Separate Stipulation and Order entered by this Court.  Defendants shall take no action that would jeopardize the divestitures ordered by this Court.

## X.  <u>Affidavits</u>

A.      Within twenty (20) calendar days of the filing of the Complaint in this matter, and every thirty (30) calendar days thereafter until the divestitures have been completed under Sections IV or V, Cinemark and Alder Wood Partners shall each deliver to the United States an affidavit as to the fact and manner of its compliance with Sections IV or V of this Final

Judgment. Each such affidavit shall include the name, address, and telephone number of each person who, during the preceding thirty (30) calendar days, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Cinemark Divestiture Assets or the Movie Tavern Divestiture Assets, and shall describe in detail each contact with any such person during that period. Each such affidavit shall also include a description of the efforts Cinemark and Alder Wood Partners has each taken to solicit buyers for their respective Divestiture Assets, and to provide required information to prospective purchasers, including the limitations, if any, on such information. Assuming the information set forth in the affidavit is true and complete, any objection by the United States to information provided by Cinemark or by Alder Wood Partners, including limitation on information, shall be made within fourteen (14) calendar days of receipt of each such affidavit.

B.      Within twenty (20) calendar days of the filing of the Complaint in this matter, Cinemark and Alder Wood Partners shall each deliver to the United States an affidavit that describes in reasonable detail all actions it has taken and all steps it has implemented on an ongoing basis to comply with Section IX of this Final Judgment. Cinemark and Alder Wood Partners shall each deliver to the United States an affidavit describing any changes to the efforts and actions outlined in their earlier affidavits filed pursuant to this section within fifteen (15) calendar days after the change is implemented.

C.      Defendants shall keep all records of all efforts made to preserve and divest their respective Divestiture Assets until one year after such divestitures have been completed.

## XI. Compliance Inspection

A.     For the purposes of determining or securing compliance with this Final Judgment, or of determining whether the Final Judgment should be modified or vacated, and subject to any legally recognized privilege, from time to time duly authorized representatives of the United States Department of Justice Antitrust Division ("DOJ"), including consultants and other persons retained by the United States, shall, upon written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to Defendants, be permitted:

(1)     access during Defendants' office hours to inspect and copy, or at plaintiffs' option, to require Defendants to provide hard copy or electronic copies of, all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of Defendants, relating to any matters contained in this Final Judgment; and

(2)     to interview, either informally or on the record, Defendants' officers, employees, or agents, who may have their individual counsel present, regarding such matters. The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by Defendants.

B.     Upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, Defendants shall submit written reports or response to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested.

C.     No information or documents obtained by the means provided in this section shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D.     If at the time information or documents are furnished by Defendants to the United States, Defendants represent and identify in writing the material to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and Defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then the Plaintiffs shall give Defendants ten (10) calendar days notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

## XII. Notification

Unless such transaction is otherwise subject to the reporting and waiting period requirements of the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, 15 U.S.C. § 18a (the "HSR Act"), Cinemark, without providing advance notification to the DOJ, shall not directly or indirectly acquire any assets of or any interest, including any financial, security, loan, equity or management interest, in a business exhibiting first-run, commercial movies in Tarrant County, Texas; Denton County, Texas; Camden County, New Jersey; or Jefferson County, Kentucky during the ten years following the filing of the Complaint in this action. Notwithstanding the preceding sentence, in no event shall Cinemark be required to provide advance notification under this provision when making an acquisition of (1) not more than two percent of the outstanding "voting securities" (as that term is defined in 16 C.F.R. § 801.1) of a publicly-traded company with theatres exhibiting first-run, commercial movies where such acquisition is made "solely for the purpose of investment" (as that term is defined in 16 C.F.R. § 801.1), or (2) not more than two percent of "non-corporate interest" (as that term is defined in 16 C.F.R. § 801.1) in any unincorporated entity that holds any interest in a business

with theatres exhibiting first-run, commercial movies where such acquisition is made "solely for the purpose of investment" (as that term is defined in 16 C.F.R. § 801.1).

Unless such transaction is otherwise subject to the reporting and waiting period requirements of the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, 15 U.S.C. § 18a (the "HSR Act"), Alder Wood Partners, without providing advance notification to the DOJ, shall not directly or indirectly acquire any assets of or any interest, including any financial, security, loan, equity or management interest, in a business exhibiting first-run, commercial movies in any county which Cinemark owns or operates a theatre exhibiting first-run, commercial movies in any state during the earlier of (a) the ten years following the filing of the Complaint in this action, or (b) the date on which any person who is a limited partner of Alder Wood Partners as of May 13, 2013, no longer serves as an officer or director of Cinemark. Notwithstanding the preceding sentence, in no event shall Alder Wood Partners be required to provide advance notification under this provision when making an acquisition of (1) not more than two percent of the outstanding "voting securities" (as that term is defined in 16 C.F.R. § 801.1) of a publicly-traded company with theatres exhibiting first-run, commercial movies where such acquisition is made "solely for the purpose of investment" (as that term is defined in 16 C.F.R. § 801.1), or (2) not more than two percent of "non-corporate interest" (as that term is defined in 16 C.F.R. § 801.1) in any unincorporated entity that holds any interest in a business with theatres exhibiting first-run, commercial movies where such acquisition is made "solely for the purpose of investment" (as that term is defined in 16 C.F.R. § 801.1).

Such notification by Cinemark and/or Alder Wood Partners shall be provided to the DOJ in the same format as, and per the instructions relating to, the Notification and Report Form set forth in the Appendix to Part 803 of Title 16 of the Code of Federal Regulations as amended,

except that the information requested in Items 5 through 9 of the instructions must be provided only about theatres that exhibit first-run, commercial movies. Notification shall be provided at least thirty (30) calendar days prior to acquiring any such interest, and shall include, beyond what may be required by the applicable instructions, the names of the principal representatives of the parties to the agreement who negotiated the agreement, and any management or strategic plans discussing the proposed transaction. If within the 30-day period after notification, representatives of the DOJ make a written request for additional information, Defendants shall not consummate the proposed transaction or agreement until thirty (30) days after submitting all such additional information. Early termination of the waiting periods in this paragraph may be requested and, where appropriate, granted in the same manner as is applicable under the requirements and provisions of the HSR Act and rules promulgated thereunder. This Section shall be broadly construed and any ambiguity or uncertainty regarding the filing of notice under this Section shall be resolved in favor of filing notice.

## XIII.  No Reacquisition

Neither Cinemark nor Alder Wood Partners may acquire or reacquire any part of the Cinemark Divestiture Assets or Movie Tavern Divestiture Assets divested under this Final Judgment during the term of this Final Judgment.

## XIV.  Retention of Jurisdiction

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

22

## XV.    Expiration of Final Judgment

Unless this Court grants an extension, this Final Judgment shall expire ten (10) years from the date of its entry.

## XVI.    Public Interest Determination

Entry of this Final Judgment is in the public interest.  The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, and any comments thereon and the United States' responses to comments.  Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and response to comments filed with the Court, entry of this Final Judgment is in the public interest.

**Date:**  August 15, 2013

Court approval subject to procedures
of Antitrust Procedures and Penalties
Act, 15 U.S.C. § 16

_/s/_ _Beryl A. Howell_
BERYL A. HOWELL
United States District Judge